```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x
SCOTT GRAUMAN, individually and on behalf of   :
all others similarly situated,                 :
                                               :
                              Plaintiff,       :       MEMORANDUM & ORDER
                                               :
          -against-                            :       20-cv-3152 (ENV) (AKT)
                                               :
EQUIFAX INFORMATION SERVICES, LLC and          :
VANTAGESCORE SOLUTIONS, LLC,                   :
                                               :
                              Defendants.      :
----------------------------------------------------------------- x
```

VITALIANO, D.J.

Scott Grauman commenced this action against Equifax Information Services, LLC and VantageScore Solutions, LLC on July 15, 2020, bringing a claim for violation of 15 U.S.C. § 1681e(b) of the Fair Credit Reporting Act ("FCRA") on behalf of himself and a putative class of similarly situated plaintiffs. Defendants move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, the motion is granted, and the case is dismissed for lack of subject matter jurisdiction.

## Background[1]

For virtually all the world, the COVID-19 pandemic is a painfully fresh nightmare or a curse still lived daily. Unquestionably, the sudden onset of the pandemic caused global devastation for every human endeavor, including alarming mortality rates, supply shortages and economic crises. In the United States alone, in a year's time, the death toll stood over 600,000 and, in even less time, unemployment grew from 6.2 million to 20.5 million in a matter of

---

[1] The facts are drawn from the complaint and taken as true for purposes of this motion. *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).

1

months. Am. Compl., Dkt. 40, ¶ 3. As a form of emergency relief, many mortgage lenders and creditors offered homeowners forbearance, deferral or suspension of their loan payments. *Id*. ¶ 4.

Non-party Wells Fargo was one of the lenders to provide such accommodations to its customers. *Id.* ¶ 16. In some instances, without the borrowers' knowledge or consent, it unilaterally suspended payments on non-delinquent mortgages or placed into forbearance the accounts of customers who contacted the lender regarding any sort of COVID-related hardship. *Id*. ¶ 17. In all, Wells Fargo provided more than 964,000 mortgagors with a three-month payment suspension, during which it promised to not charge late fees or report additional missed payments to the credit bureaus. *Id*. ¶ 16.

Grauman is a Wells Fargo customer whose mortgage payments were suspended from April 15 to July 1, 2020. *Id.* ¶ 9. He does not specify whether he requested relief or was granted it unilaterally. As with others, Wells Fargo promised to not charge Grauman late fees or report further missed payments to the credit bureaus. *Id*. ¶¶ 9, 16. Despite the suspension, Grauman continued to make his monthly mortgage payments on time. *Id*. ¶ 9. On June 6, 2020, he obtained his credit report from Equifax, one of the major consumer reporting agencies. *Id.* ¶¶ 9, 13–14, 19. It reflected a 16-point drop in his credit score, which Grauman attributed to what he saw as Wells Fargo's improper reporting of his mortgage payment suspension. *Id*. ¶¶ 9, 19. In July 2020, his credit report stated that a remark by "Wells Fargo Home Mortgage" had been removed from his account. *Id*. ¶ 19. Grauman, however, states that his credit score was not restored to its prior higher level. *Id*.

In Grauman's telling, Equifax should have adjusted its reporting systems to ensure that Wells Fargo's and other creditors' temporary suspension of customers' mortgage payments—

which he says Wells Fargo had promised not to report—did not lower their credit scores. *Id*. ¶¶ 20–21. Instead, he claims, a measure meant to provide relief from the pandemic's economic toll became a further financial blow. *Id*. ¶ 50. Grauman also blames his predicament on VantageScore, a company co-owned by credit reporting agencies TransUnion[2] and Equifax. *Id*. ¶¶ 21–22. VantageScore provides an algorithm used to generate consumers' credit scores based on events such as payments or account closures. *Id*. ¶¶ 22, 28. The scores then appear on TransUnion and Equifax credit reports which are, in turn, used by creditors to evaluate individuals' creditworthiness. *Id.* ¶¶ 23, 29. Grauman alleges that VantageScore should have adjusted its credit scoring model to render pandemic-related loan relief a score-neutral event. *Id*. ¶¶ 31–37.

Grauman filed the instant action on July 15, 2020, alleging that defendants' reporting of his mortgage loan suspension, and his resulting credit score drop, constituted a negligent and willful violation of FCRA's requirement that credit reporting agencies employ reasonable procedures to ensure the accuracy of consumer reports. *See id.* ¶¶ 57–64; 15 U.S.C. § 1681e(b).

<u>Standard of Review</u>

Standing "'is an essential and unchanging part of the case-or-controversy requirement of Article III'" of the Constitution. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342, 126 S. Ct. 1854, 1861, 164 L. Ed. 2d 589 (2006) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992)); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to

---

[2] Plaintiff voluntarily dismissed defendant TransUnion LLC on January 19, 2021, pursuant to Federal Rule of Civil Procedure 41(a)(2)(A)(i). *See* Dkts. 44, 45.

adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  Ultimately, "the plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence," *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005), but "at the pleading stage, standing allegations need not be crafted with precise detail," *Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003) (citing *Lujan*, 504 U.S. at 561).

Although, where the existence of standing is tested at the doorstep of federal court by a motion to dismiss under Rule 12(b)(1), a court "must accept as true all material factual allegations in the complaint," it must not draw inferences favorable to the party asserting jurisdiction. *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). Additionally, in resolving such motion challenging subject matter jurisdiction, a district court may consider evidence outside the pleadings. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). A challenge to subject matter jurisdiction is a challenge to the power of the court, so when defendants move to dismiss under both Rules 12(b)(1) and 12(b)(6), the court must address the 12(b)(1) motion first. *See Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 481 (2d Cir. 2002).

## Discussion

Both Equifax and VantageScore challenge Grauman's standing to bring this lawsuit. Saddled with the burden of establishing his standing, Grauman must prove three essential elements by a preponderance: first, a plaintiff must allege that he has suffered an "injury in fact;" that is, "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" second, "there must be a causal connection between the injury and the conduct complained of;" in other words, "the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent

action of some third party not before the court;" and third, it must be "likely . . . that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61. Furthermore, since "standing is not dispensed in gross," it is part of the plaintiff's burden, including each class member in a class action, to "demonstrate standing for each claim that they press and for each form of relief that they seek." *Ramirez*, 141 S. Ct. at 2208.

Consistent with the initial element of the test, the core task on this motion is straightforward. It is determining whether Grauman has shown that he suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. In tautological fashion, courts easily find a plaintiff has alleged an invasion of a legally protected interest where, as here, he sues over the violation of a legally protected right. *See Strubel v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016). Interestingly, the landscape for this inquiry hardly remains static. Indeed, Congress unquestionably has the authority to create new legal interests by statute, the invasion of which can support standing. *See id.*; *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016). It is the route Grauman follows here; spotlighting the creation by Congress of FCRA to protect the accuracy of consumers' credit reports and their reputational interests. *See Spokeo, Inc.*, 136 S. Ct. at 1545. Grauman claims defendants have run afoul of this statute, particularly § 1681e(b). Am. Compl. ¶¶ 57–64. He, therefore, clearly purports to claim an invasion of a legally protected interest.

"But even where, as here, Congress has statutorily conferred legal interests on consumers, a plaintiff only has standing to sue if [he] can allege concrete and particularized injury to that interest." *Strubel*, 842 F.3d at 188; *see also Ramirez*, 141 S. Ct. at 2203. In other words, the existence of a relevant statute "does not relieve courts of their responsibility to

5

independently decide whether a plaintiff has suffered a concrete harm under Article III." *Ramirez*, 141 S. Ct. at 2205. In fact, the parties' core dispute is over whether plaintiff's claimed injury is concrete. Importantly on this motion, "[a] plaintiff cannot 'allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.'" *Shimon v. Equifax Info. Servs. LLC*, 431 F. Supp. 3d 115, 123 (E.D.N.Y. 2020), *aff'd*, 994 F.3d 88 (2d Cir. 2021) (quoting *Spokeo, Inc.*, 136 S. Ct. at 1549). Nor, however, has the Supreme Court "'categorically . . . preclude[d] violations of statutorily mandated procedures from qualifying as concrete injuries supporting standing.'" *Cohen v. Experian Info. Sols., Inc.*, No. 20-CV-3678 (BMC), 2021 WL 413494, at *1 (E.D.N.Y. Feb. 5, 2021) (quoting *Strubel*, 842 F.3d at 189).

Instead, it has opted to provide a refinement of its general guidance, specifically in its recent decision in *TransUnion LLC v. Ramirez*. In that case, the Court states that the central question in assessing an injury's concreteness is "whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts," though an "exact duplicate" is unnecessary. *Ramirez*, 141 S. Ct. at 2208 (quoting *Spokeo, Inc.*, 136 S. Ct. at 1549). A concrete injury can, moreover, be tangible or intangible. *Id.* at 2200. Certain tangible harms, such as physical and monetary damage, readily qualify as concrete, but various intangible harms, such as reputational damage, can, too. *Id.*

The plaintiffs in *Ramirez*, a class action, likewise brought suit under § 1681e(b) of FCRA. *Ramirez*, 141 S. Ct. at 2202, 2208. They alleged that TransUnion failed to ensure the accuracy of its reporting procedures when it noted on plaintiffs' credit reports that their names matched those of terrorists and other serious criminals on the Office of Foreign Assets Control watchlist, despite plaintiffs not actually being the listed individuals. *Id.* at 2201–2. For some

plaintiffs, credit reports containing that damaging inaccuracy had been disseminated to third parties, such as, for the named plaintiff, a car dealership which then refused to sell him a car. *Id*. As to those plaintiffs, the Court found their injuries bore a close relationship to the reputational harm associated with the traditionally recognized tort of defamation. *Id*. at 2208–9. Because defamation cases aimed to compensate plaintiffs for "'the loss of credit or fame and not the insult, it was always necessary to show a publication of the words,'" which that set of plaintiffs successfully did. *Id*. at 2209 (quoting J. Baker, *An Introduction to English Legal History* 474 (5th ed. 2019)).

The credit reports of a second group of plaintiffs, however, had never been disseminated to third-party creditors. *Id.* The Court held that without dissemination, those plaintiffs' injury did not share a "close relation" to defamation or any other "traditionally recognized" suit, so was not concrete. Just as a plaintiff could not bring a defamation suit over a letter that merely sat in a desk drawer, these plaintiffs could not bring their FCRA suit over information that had never left the credit reporting agency's database. *Id.* at 2210. In sum, "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." *Id*.

The Supreme Court also addressed the argument that those plaintiffs were concretely injured by a risk of future harm—the risk that their inaccurate credit reports would later be disseminated. *Id*. at 2210–12. It held that a "sufficiently imminent and substantial" risk of future harm could confer standing to pursue injunctive relief. *Id*. at 2210. As to retrospective damages, however, "the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm," such as a psychological one. *Id*. at 2211 & n.7. If the risk eventually materialized,

plaintiffs would have a concrete injury and could seek damages; if not, they were never injured. *Id.* As plaintiffs in *Ramirez* sought only damages, their claimed risk of future harm from their reports' dissemination did not confer standing.

The close similarities between *Ramirez* and Grauman's case are surely dispositive. Grauman also brings suit under § 1681e(b), claiming that the improper notation on his credit report and resulting credit score drop could cause him reputational and financial harm. Am. Compl. ¶¶ 21, 36, 39. As to reputational harm, of the sort addressed in *Ramirez*, Grauman claims defendants' changes to his credit report and score hurt his creditworthiness, unfairly branding him with the "scarlet letter" of appearing unable to pay his mortgage. *Id.* ¶ 36. Nowhere, however, does Grauman allege that his credit report was disseminated to third parties—neither in the brief period when the notation of his loan payment suspension appeared on his credit report, nor during the even briefer period between the removal of that notation and the filing of this action. *Id.* ¶¶ 9, 19. Grauman is, therefore, unlike the first group of plaintiffs in *Ramirez*, who suffered defamation-like reputational harms after third parties obtained credit reports falsely implying they were terrorists. *Cf. Ramirez*, 141 S. Ct. at 2208–9. Rather, Grauman is comparable to the second group of plaintiffs, whose reputations could not have been concretely harmed because their inaccurate credit reports were never disseminated. *Cf. id.* at 2209–13. In sum, the notation of Grauman's loan suspension on his credit report and the diminution in his credit score are insufficient, standing alone, which they do stark nakedly in the complaint, to demonstrate a concrete reputational injury.[3]

---

[3] Previously, many courts had held that a drop in a plaintiff's credit score was a sufficiently concrete injury in fact under *Spokeo*, capable of causing real-world harms such as the denial of credit. *See, e.g.*, *Hafez v. Equifax Info. Servs., LLC*, No. 20-CV-9019 (SDW) (LDW), 2021 WL 1589459, at *4 (D.N.J. Apr. 23, 2021); *Coulter v. Chase Bank USA, N.A.*, No. 18-CV-1538 (JLS), 2020 WL 5820700, at *7 (E.D. Pa. Sept. 30, 2020); *Escobar v. Midland Credit Mgmt.*,

Grauman also alludes to financial injury. "[M]onetary harms" are one of the "most obvious" types traditionally recognized by the courts and, where they occur, can confer standing. *Id.* at 2204. Specifically, Grauman alleges that defendants' reporting of mortgage suspensions threatened to "compound the financial impact of COVID-19" by harming "mortgagors' financial status and their ability to acquire additional credit." Am. Compl. ¶¶ 43, 50. Yet this generalized allegation is all Grauman offers. He makes no claim that he tried or was imminently planning to try to use his credit report to procure credit, or that he personally experienced any other financial harm. Here too, then, the lack of dissemination of Grauman's credit report renders him unable to adequately allege a concrete injury.

The final option is to claim a risk of future harm. Grauman seeks only damages, for which, in order to have standing, he must allege that "the exposure to the risk of future harm itself causes a *separate* concrete harm." *Ramirez*, 141 S. Ct. at 2211.[4] Yet his pleadings do not state that he has been damaged by any risks of financial or reputational harm, such as fears that his credit report would soon be disseminated. *Cf. id.* at 2211 n.7 ("[A] plaintiff's knowledge that he or she is exposed to a risk of future physical, monetary, or reputational harm could cause its own current emotional or psychological harm."). Thus, like the second group in *Ramirez*, he

---

No. 18-CV-819 (MPS), 2019 WL 3751486, at *3 (D. Conn. Aug. 8, 2019); *Boone v. T-Mobile USA Inc.*, No. 17-CV-378 (KM) (MAH), 2018 WL 588927, at *8–9 (D.N.J. Jan. 29, 2018) (collecting cases). Following *Ramirez*, however, that holding is no longer tenable in cases where plaintiffs do not allege that their reduced credit score was disseminated, or was accompanied by any other injury resembling a historically recognized harm.

[4] Grauman appears, passingly, to seek injunctive relief in the form of an "order requiring defendants to immediately halt and correct their unlawful practices." Am. Compl. ¶ 6. Although an imminent, substantial risk of future harm can confer standing to seek an injunction, that is immaterial here given that injunctive relief is unavailable in suits brought by private parties under § 1681e(b) of FCRA. *See Ramirez*, 141 S. Ct. at 2197; *George v. Equifax Mortg. Servs.*, 2010 WL 3937308, at *3 (E.D.N.Y. Oct. 5, 2010); *White v. First Am. Registry, Inc.*, 378 F. Supp. 2d 419, 424 (S.D.N.Y. 2005).

lacks the requisite injury to seek compensatory damages. In all, without a concrete injury in fact, Grauman lacks standing to bring his FCRA claim, and defendants' motion to dismiss for lack of subject matter jurisdiction is compelling, and must be granted.

Conclusion

For the reasons discussed above, defendants' motion to dismiss under Rule 12(b)(1) is granted and the complaint is dismissed without prejudice for lack of subject matter jurisdiction.[5]

The Clerk of Court is directed to enter judgment accordingly and to close this case.

So Ordered.

Dated: Brooklyn, New York
       July 16, 2021

/s/ Eric N. Vitaliano
ERIC N. VITALIANO
United States District Judge

---

[5] Dismissal must be without prejudice because "when a case is dismissed for lack of federal subject matter jurisdiction," including for lack of standing, "'Article III deprives federal courts of the power to dismiss [the] case with prejudice.'" *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) (quoting *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999)).